UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                            CASE NO.   8:10-cr-68-T-23TGW
                                                                                      8:11-cv-2103-T-23TGW
JAMES McDAVID
_____/

## O R D E R

McDavid's motion to vacate under 28 U.S.C. § 2255 (Doc. 1) challenges the validity of his conviction for conspiring to possess with the intent to distribute fifty grams or more of methamphetamine, for which offense McDavid is imprisoned for 168 months. Although admitting that the motion to vacate is timely (Response at 5, Doc. 5), the United States argues that, as part of his plea agreement, McDavid waived his right to raise the ground asserted in the motion to vacate. The motion to vacate presents a single claim of ineffective assistance of counsel, which claim is both waived and meritless.

## PROCEDURAL HISTORY AND FACTS

McDavid was indicted for one count of conspiring to possess with the intent to distribute fifty grams or more of methamphetamine. McDavid agreed to plead guilty and waived his right to appeal or otherwise challenge his sentence. In exchange the United States agreed (1) to withhold a sentencing enhancement that would have

mandated a sentence of life imprisonment, (2) to support a three-level reduction for acceptance of responsibility, (3) to recommend a sentence at the low end of the applicable guideline range, and (4) to support a sentence reduction based on McDavid's anticipated substantial assistance. McDavid agreed to the following facts, as stated in the plea agreement (Doc. 52 at 14-15):

> From a date unknown through and including February 13, 2009, the defendant James McDavid and Kimberly Broman conspired to manufacture and distribute 50 grams or more of methamphetamine actual. On February 13, 2009, members of the Hernando County Sheriffs Office executed a search warrant at a residence (trailer) on Gresham Road, Webster, Florida, occupied at the time by James McDavid and Kimberly Broman. When the officers arrived, they found Broman in the trailer wearing heavy plastic gloves and holding a tube into the top of a large Mason jar with a mixture of liquid which contained methamphetamine. Nearby were filters, jars, and other paraphernalia commonly used to manufacture methampheta-mine, including Coleman fuel jars, hydrogen peroxide, ammonia, butane, drain cleaners, muriatic acid, and rubber gloves. One of the filters from one of the jars of liquid had .16 grams of 95.4 % pure methamphetamine actual.
>
> McDavid was standing outside the trailer with another male by a shed that contained methamphetamine manufacturing materials. In a post-arrest statement, McDavid stated that all the methamphetamine on the property was his and that he had cooked methamphetamine every couple of days, each time producing approximately 4 to 5 grams. McDavid stated that he obtained all his materials at nearby stores, such as Walmart, Home Depot, Lowe's and Walgreens. McDavid stated that he sold methamphetamine to his friends for $10 a hit. While being searched incident to arrest, Broman indicted that she had some methamphetamine in her bra. When they searched her, officers found .4 grams of 96.9 percent pure methamphetamine actual.
>
> Pharmacy records later obtained by the DEA from CVS, Walmart, and Walgreens showed that in the prior year McDavid had obtained over 38 grams of pseudoephedrine and Broman had obtained 99.6 grams of pseudoephedrine. The

>conservative theoretical yield of only 50% for these quantities of pseudoephedrine is 17.55 grams and 45.81 grams of methamphetamine actual respectively; however, the evidence seized from the execution of the search warrant indicates a much higher yield of over 90% actually was being produced by the defendants.

## **APPEAL WAIVER**

In his plea agreement McDavid agreed to waive his "right to appeal [his] sentence or to challenge it collaterally on any ground" except under certain inapplicable situations. (Doc. 52 at 12 in 10-cr-68) When he entered his guilty plea, the Magistrate Judge specifically ensured that, under the terms of the appeal waiver, McDavid understood that he was waiving any right to challenge the district court's calculation of his sentence. (Doc 105 at 21-22)

>The Magistrate Judge: And in particular, what you cannot appeal is the way the Court calculates the sentencing guidelines. Do you understand that?
>
>The Defendant: Yes, sir.
>
>The Magistrate Judge: Furthermore, you cannot come back to this court at some later time and complain about the calculation either. Do you understand that?
>
>The Defendant: Yes, sir.
>
>The Magistrate Judge: And that includes being unable to come back and complain that your lawyer was ineffective somehow with respect to the guidelines. Do you understand that?
>
>The Defendant: Yes, sir.
>
>The Magistrate Judge: Do you have any question about that provision?
>
>The Defendant: No, sir.

A valid appeal waiver precludes an ineffective assistance of counsel challenge to the sentence. *Williams v. United States*, 396 F.3d 1340, 1342 (11th Cir.) ("[A] valid sentence-appeal waiver, entered into voluntarily and knowingly, pursuant to a plea agreement, precludes the defendant from attempting to attack, in a collateral proceeding, the sentence through a claim of ineffective assistance of counsel during sentencing."), *cert. denied*, 546 U.S. 902 (2005). McDavid cannot circumvent the appeal waiver provision by disguising his challenge as a claim of ineffective assistance of counsel. "A contrary result would permit a defendant to circumvent the terms of the sentence-appeal waiver simply by recasting a challenge to his sentence as a claim of ineffective assistance, thus rendering the waiver meaningless." *Williams*, 396 F.3d at 1342. As a consequence, McDavid waived his right to challenge the calculation of his sentence, even under the guise of ineffective assistance of counsel.

## **INEFFECTIVE ASSISTANCE OF COUNSEL**

McDavid claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (*quoting Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is
> well settled and well documented. In *Strickland v. Washington*,
> 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the

> Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

McDavid must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant

setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691-92. To meet this burden, McDavid must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690-91. McDavid cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (*quoting*

*Burger v. Kemp*, 483 U.S. 776, 794 (1987)). *See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (counsel has no duty to raise a frivolous claim).

McDavid pleaded guilty. Although the *Strickland* standard controls a claim that counsel was ineffective for recommending that a client plead guilty, *Hill v. Lockhart*, 474 U.S. 52 (1985), *Agan v. Singletary*, 12 F.3d 1012 (11th Cir. 1994), the quantum of evidence needed to prove both deficient performance and prejudice is different. "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decided to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial." *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984). To prove prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. at 59.

## SOLE GROUND FOR RELIEF

McDavid alleges a single ground for relief, specifically that trial counsel rendered ineffective assistance by not moving to postpone sentencing until after the effective date of a pending amendment to the sentencing guidelines. McDavid was sentenced on September 21, 2010. Because he committed his offense less than two years following his release from custody, the calculation of McDavid's sentence includes two points as required by the version of §4A1.1(e) in effect when he was

sentenced. In addition to other changes, the United States Sentencing Commission's Amendment 742 removed from the sentencing calculus the addition of two points under §4A1.1(e). Amendment 742 was scheduled to become effective on November 1, 2010, approximately six weeks after McDavid's sentencing.

McDavid was sentenced to 168 months based on a total offense level 33 and a criminal history category III, which produces a sentencing range of 168 - 210 months. McDavid contends that, without the extra two points, his total offense level would be 31 and the criminal history category would remain III, which produces a sentencing range of 135 - 168 months. McDavid contends that, if counsel had moved to postpone sentencing to benefit from Amendment 742, he would have received a low end sentence of 135 months, nearly three years less imprisonment. McDavid faults counsel for not postponing sentencing.

Neither McDavid nor his counsel nor the government nor the district court were ignorant about the effective date of Amendment 742. Trial counsel raised the issue at sentencing and the question about retroactivity was discussed. (Doc. 75 at 4-6) The district court, already familiar with Amendment 742, stated that "there are pluses and minuses in there and I couldn't selectively enforce only the parts of it that cut in the defendant's favor without looking at the other part." (Doc. 75 at 5)

Even assuming that trial counsel's failure to move for a postponement was deficient performance, McDavid cannot show prejudice because the district court would have denied a postponement. The district court discussed the need to proceed

with the action under the controlling law.  Moreover, the government's concessions were based on the then-applicable guidelines and the prosecutor explained the "appropriateness" of the sentencing range under the guidelines in effect on the date of sentencing rather than the future guidelines under the amendment (Doc. 75 at 10):

> [McDavid] has, although close together in time, two prior cocaine sales and not one, which could have resulted in an enhancement to a mandatory life, which we didn't file because he had said he wanted to cooperate.  So, he has received a fairly large benefit already from what he could have gotten.
>
> . . . .
>
> I just wanted to point that out to the court that the guidelines that he has right now, the applicable guideline range, is very appropriate, especially in considering his – potentially, he could have gotten the mandatory life sentence.

McDavid waived his right to challenge the calculation of his sentence, even under the guise of ineffective assistance of counsel.  McDavid proves neither deficient performance nor prejudice as required under *Strickland*.  McDavid had no guarantee that the United States would have afforded him the same generous concessions if he was sentenced after the effective date of Amendment 742.

Accordingly, the motion to vacate under 28 U.S.C. § 2255 (Doc. 1) is **DENIED**.  The clerk shall enter a judgment against McDavid and close this case.

### DENIAL OF BOTH CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

McDavid is not entitled to a certificate of appealability ("COA").  A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's

denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a certificate of appealability, McDavid must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because McDavid fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, McDavid is not entitled to a certificate of appealability and he is not entitled to appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**. Leave to proceed *in forma pauperis* on appeal is **DENIED**. McDavid must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on September 30, 2014.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE